JOHN A. DODD & others *vs.* JOHN S. FARLOW & another.

A merchandise broker can have no implied authority, from the usage of trade, to warrant goods sold by him to be of merchantable quality; and evidence to prove such usage is inadmissible; and a memorandum made by such broker of a contract for the sale of goods is invalid and inadmissible in evidence, if he has inserted therein, without express authority, a warranty by the seller that they are of merchantable quality.

CONTRACT brought to recover damages for the non-delivery of forty bales of tanned goat skins, sold by the defendants, who were partners, to the plaintiffs.

At the trial in the superior court, before *Russell,* J., the plaintiffs introduced evidence to show that on the afternoon of July 5th 1864 William A. Bates, a merchandise broker, asked the defendant Farlow at what rate he would sell sixty bales of tanned goat skins which had lately arrived ; to which Farlow replied at $1.25 a skin. Bates, acting in behalf of the plaintiffs and two other parties, said he would take them at that price. Farlow asked Bates who his parties were, and Bates declined to disclose them. Farlow asked if they were responsible, and if it would be prompt cash, and Bates said yes, that all the skins were taken, but he could not render the sale notes to him, because there were several parties who had not agreed upon the division of the skins ; to which Farlow replied that he did not wish any delay that could be helped, as he wished to make a remittance. Bates entered memoranda of his sales in his salesbook to three parties on the same afternoon, but in two in stances he left the number of skins blank. Before the above interview with Farlow, he had obtained from the defendants a memorandum of the skins, with their weight.

There was also evidence tending to show that on the morning of the 7th of July Bates arranged with the two parties their proportions of the skins, but being immediately afterwards called away he did not make out the sale notes and send them to the defendants until about two o'clock that afternoon, when the defendants refused to accept them.

The sale note to the plaintiffs was as follows, the portions

thereof which here appear in Roman letters being printed in the blank form which was used : " Boston, *July 5th* 1864. Sold to *Messrs. John A. Dodd & Co.* for account of *Messrs. John S. Farlow & Co.* per ship *Union* from *London,* 40 *bales tanned goat skins* 400 *pcs ea is* 16000 *pcs* @ $1.25 *each.* To be of merchantable quality and in good order, deliverable *from store.* Terms *cash nett. Wm A. Bates,* Broker in goat skins, sumac and gambia." In the margin were printed these words : " In case of damage, goods to be taken at fair allowance."

The defendants contended that they did not authorize the broker to sell the goods on the terms above stated, but only authorized him to sell for cash to be paid the next day, and they testified in contradiction of the plaintiffs' evidence.

It appeared that prior to the 5th of July an agent of the plaintiffs had twice examined the skins, though not sufficiently to ascertain the character of all of them. And the plaintiffs were allowed, under objection, to introduce evidence to show that, by the usage of trade in Boston in case of sales of this kind of goods, they were impliedly warranted to be of merchantable quality, and that by custom when merchants sold such goods through a broker he had authority to insert words to this effect in his memorandum, unless forbidden to do so.

The defendants asked the court to rule that the words in the sale note showing the quantity sold were a warranty that there was that number of skins, which the broker was not authorized to insert unless expressly authorized ; that he was not authorized to insert the words " of merchantable quality," unless expressly authorized ; that if it is a usage for brokers in tanned goat skins, when nothing is said on the subject of warranty and the buyer has an opportunity for examination, to insert in the memorandum a warranty of merchantable quality, such usage is unauthorized in law; and that the words in the margin of the sale note were a material part thereof, which the broker had no authority to insert unless expressly authorized. These requests were refused, and the judge instructed the jury that the broker was not authorized to insert the words " of merchantable quality," unless expressly authorized, or unless under the usage

set up by the plaintiffs the jury should find implied authority to insert it.

The defendants then requested the court to instruct the jury that, if they should be satisfied that the contract of July 5th was a contract for one sale of all the skins, then the three sale notes were not in conformity to the contract, and there was no memorandum of the contract signed by the parties. The judge gave this instruction, with this addition: " But if the defendants, knowing that there might be more than one purchaser, did not ask or care how many purchasers there were, and if the broker did not tell Farlow or give him to understand that there was only one purchaser, and especially if the broker informed him that there was more than one party purchasing, then the defendants cannot avail themselves of the defence that there was more than one purchaser."

The jury returned a verdict for the plaintiffs, with $1854 damages; and the defendants alleged exceptions.

*H. W. Paine & R. D. Smith*, for the defendants, cited, as to the usage relied on, *Eager* v. *Atlas Ins. Co.* 14 Pick. 145; *Bolton* v. *Colder*, 1 Watts, 360; *Snowden* v. *Warder*, 3 Rawle, 101, *Stoever* v. *Whitman*, 6 Binn. 416; *Coxe* v. *Heisley*, 19 Penn. State R. 243; *Donnell* v. *Columbian Ins. Co.* 2 Sumner, 367 *Thompson* v. *Ashton*, 14 Johns. 316; *Beirne* v. *Dord*, 1 Selden, 101.

*C. A. Welch*, for the plaintiffs, cited, upon the same point, *Dwight* v. *Whitney*, 15 Pick. 179, 183; *Upton* v. *Suffolk Co Mills*, 11 Cush. 586, 589; *Goodenow* v. *Tyler*, 7 Mass. 36, 38 40; *Syers* v. *Jonas*, 2 Exch. 111; *The Monte Allegre*, 9 Wheat. 616, 644; *Andrews* v. *Kneeland*, 6 Cow. 354; *Alexander* v. *Gibson*, 2 Camp. 555.

BIGELOW, C. J. We do not deem it necessary to determine all the questions raised at the trial of this case, because it seems to us that there is one objection to the validity of the memorandum of the contract which is fatal to the plaintiffs' claim. It is conceded that the broker who made the contract had no express authority from the defendants to warrant the articles sold to be of merchantable quality. Nevertheless such a warranty was

inserted in the memorandum or sale note delivered to the plaintiffs by the broker.

It was contended, on the part of the plaintiffs, that an authority to make such warranty is derived from the usage of trade; and evidence was offered from which, under instructions from the court, the jury have found that an authority was implied, in case of a sale by a broker of the kind of merchandise described in the memorandum, to insert a warranty of their quality which would be binding on the vendor. But notwithstanding this finding, we are clearly of opinion that the plaintiffs are not entitled to recover, because the alleged usage on which the jury have based their verdict is unauthorized by law, and cannot be regarded as valid. It contravenes the principle, which has been sanctioned and adopted by this court upon full and deliberate consideration, that no usage will be held legal or binding on parties which not only relates to and regulates a particular course or mode of dealing, but which also engrafts on a contract of sale a stipulation or obligation which is different from or inconsistent with the rule of the common law on the same subject. *Dickinson* v. *Gay*, 7 Allen, 34, 37.

Such, as we understand it, was the effect of the usage proved at the trial. It consisted of two parts or branches, each of which was essential to the one integral usage on which the plaintiffs relied; and unless both can be maintained as legal and valid, the entire usage must fall to the ground. The first branch was in substance this: that, in a sale of the particular kind of goods which was the subject of controversy in this case, although nothing may have been said in making the bargain on the subject of warranty or as to the quality of the merchandise, and notwithstanding the buyer may have had opportunity to examine it, there was nevertheless a warranty tacitly implied that the article was merchantable. The second branch of the usage was a sequence of the first, and was this: that where the same kind of goods was sold through the agency of a broker, he had, by implication derived from usage, authority to give an express warranty of the articles and to insert it in the memorandum, unless forbidden to do so by the vendor. The proof of usage,

therefore, was confined in terms to cases where a warranty as between vendor and purchaser would be implied if the sale was made directly, without the intervention of a broker, and it was only as a part of or consequence of this usage that a broker was authorized to insert an express warranty in the sale note when employed to sell the same kind of merchandise. It was not contended that any distinct and independent usage existed by which a broker had authority to give such warranty, but only that as by usage a warranty would be implied in a sale of such goods between vendor and purchaser, so an authority by the same usage was given to the broker to insert an express warranty in the memorandum.

Regarding therefore the usage as an integral one, the decisive objection to its recognition is, that it embraces an element directly contrary to the ancient and well established rule of the common law, that a vendor cannot be held responsible for the quality of goods sold, if he make no warranty or representation concerning their nature, condition or merchantable value. In other words, it abrogates, to a certain extent, the maxim *caveat emptor*, and puts on the vendor the burden of warranty, although he may be ignorant of the quality of the articles, or may have had no means of ascertaining their condition or value, and may have had no intention of selling the article with warranty. Such a usage is very like the one relied upon in the leading case of *Thompson* v. *Ashton*, 14 Johns. 316, which was held invalid and of no effect because it tended to introduce vagueness, confusion and uncertainty into the rules regulating the rights and obligations of parties under contracts for the sale of merchandise.

But we do not think that it would avail the plaintiffs, or add anything to the validity of the usage which they set up in support of the contract of sale, if we could separate its two parts or branches, and consider the case as depending on that portion of the usage only by which an authority is implied in a broker to insert an express warranty of an article in a sale note when no such authority has been conferred by the vendor. The difficulty in the way of sanctioning and adopting in a court of law

that part of the usage seems to us to be insuperable. It is liable to the grave objection that it is unreasonable, and so contrary to the ordinary rules by which the relation of principal and agent is regulated, that it cannot be presumed to have been in contemplation of a vendor in employing a broker to make a sale of merchandise. Even if the usage was known to the vendor, he would have a right to disregard it, and to disavow a contract made in conformity to it. *Seccomb* v. *Provincial Ins. Co.* 10 Allen, 305, 314. We have very great doubt whether a usage can be regarded as reasonable which invests an agent with power to bind his principal by a contract into which the latter had not by any word or act, either express or implied, of his own, authorized the agent to enter. The effect of the usage in question is not merely to give authority to a person acting as broker for another to make a sale in the ordinary way with the usual stipulations and incidents of such a contract; but it extends the authority of the agent and invests him with power to insert a special agreement, which fastens on the vendor a liability not usually included in a sale of chattels in the regular course of business.

But the objection does not stop here. By the terms of the usage, as proved at the trial, the authority of the broker to give a warranty is implied, wholly irrespective of the nature and condition of the particular property which may be the subject of the contract, without any regard to. the facts and circumstances under which the sale is authorized to be made. If this usage is upheld, then a broker may give a warranty binding on his principal, although the latter may have authorized goods to be sold, not for a sound price, but at a rate far below the market value ' of a merchantable article ; so he may be held liable on his broker's warranty, although at the time of the sale he may never have seen the goods, and knew·nothing of their condition or value, or even when he knew that they were an inferior article, or had been greatly damaged ; and this too where the vendee may have seen and examined the article and had full opportunity to become acquainted with its quality and condition. The dangerous consequences which would follow if such usages

were permitted to interfere with the operation of established legal principles and to control the rights and obligations of parties under contracts are too plain and palpable to allow us to hesitate in rejecting them as unreasonable and invalid.

We are inclined to think that the instructions were defective in not submitting to the jury in a clear and precise form the question of the authority of the broker to make three separate and distinct sales to different persons, instead of one sale of the whole lot of merchandise to one person. But it is unnecessary to dwell on this part of the case, as in the event of another trial the case may present itself in an aspect which will render this part of the controversy unimportant.

*Exceptions sustained.*